USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUCESORES DE DON CARLOS NUÑEZ Y DOÑA PURA GALVEZ, INC., *et al.*,

        Plaintiffs,

-against-

SOCIÉTÉ GÉNÉRALE, S.A. and BNP PARIBAS, S.A.,

        Defendants.

1:20-cv-851 (MKV)

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

    This case concerns the Helms-Burton Act, which allows any United States national with a claim to property confiscated by the Cuban government to sue any person who traffics in such property. More specifically, this case revolves around the assets owned by Banco Nuñez, which was one of the largest banks in Cuba when it was confiscated by the Cuban government in 1960 and absorbed into Banco National de Cuba ("BNC"). The plaintiffs in this case are heirs of former owners of Banco Nuñez, and the corporation they created to pursue their claims related to the bank's confiscation. Plaintiffs brought this action against two French banks, Société Générale, S.A. ("SocGen") and BNP Paribas, S.A. ("Paribas"), for doing business with BNC and thereby "trafficking" their confiscated assets.

    In an earlier Opinion, Judge Wood (to whom the case was then assigned) dismissed Plaintiffs' claims for failure to plausibly plead that either defendant acted with the requisite scienter. *See Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Société Générale, S.A.*, 577 F. Supp. 3d 295 (S.D.N.Y. 2021). In an attempt to remedy this deficiency, Plaintiffs filed the operative Third Amended Complaint ("TAC"). The defendants now move to dismiss

1

that complaint for failure to state a claim upon which relief can be granted and for lack of personal jurisdiction.  For the below reasons, that motion is granted.

## BACKGROUND[1]

The relevant background is set forth in the Judge Wood Opinion, familiarity with which is assumed.  In brief, Plaintiffs alleged in the Second Amended Complaint ("SAC") that SocGen and Paribas trafficked their confiscated assets by operating credit facilities that made U.S. dollar-denominated loans to BNC and other Cuban banks.  *See Sucesores*, 577 F. Supp. 3d at 302.  Plaintiffs alleged that much of this conduct occurred between 2000 and 2010, and that Defendants had admitted such conduct to U.S. authorities.  *Id.*  As for post-2010 conduct, the complaint alleged merely that "Defendants' trafficking is ongoing" and that "SocGen and Paribas continue to traffic in Plaintiffs' property in substantially the same manner."  *Id.* at 312.

In dismissing Plaintiffs' claims, Judge Wood held that the SAC failed to adequately allege that the defendants knew or had reason to know at the time that they were doing business with BNC that BNC held confiscated property.[2]  *Id.* at 311.  In so holding, Judge Wood acknowledged that SocGen and Paribas had received a demand letter from Plaintiffs—in June 2019 and February 2020, respectively—which plausibly put them on notice that BNC held confiscated assets from Banco Nuñez.  *Id.* at 302, 312.  However, Judge Wood concluded that allegations that the trafficking had continued after 2010 were "too vague to support an inference

---

[1] The Court draws its facts from the Judge Wood Opinion and from the Third Amended Complaint [ECF No. 122] ("TAC"), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Judge Wood also dismissed the complaint as to three of the plaintiffs on the alternative ground that they were ineligible to bring suit under the Act because they acquired claim to the confiscated property only after March 12, 1996 (the cut off date under the terms of the Act).  *See Sucesores*, 577 F. Supp. 3d at 303-08.  This Opinion does not address that issue, which proves unnecessary to its holding.

that either Defendant continued to extend credit to BNC . . . after receiving a demand letter." *Id.* at 313.

In response to the dismissal, Plaintiffs amended their complaint in an attempt to show that SocGen and Paribas continued their relations with BNC even after being advised that BNC held confiscated property. As to SocGen, Plaintiffs made only one additional allegation: that in late August or early September 2019, an employee of SocGen (referred to as a "whistleblower") approached Plaintiffs' counsel and reported that SocGen "continues to derive profits from the bank's commercial activities in Cuba. Those activities include providing Cuban entities access to foreign currency needed to transact business internationally and transact on international markets." TAC ¶ 46. Plaintiffs then added, "[u]pon information and belief, that foreign currency flows through BNC, which is the primary financial institution with whom foreign companies do business in or with Cuba." TAC ¶ 46; *see also* TAC ¶ 48 (SocGen "continued, through at least late August or early September 2019, to provide the Cuban Government—and, upon information and belief, BNC—access to U.S. dollars and other foreign currency").

As for Paribas, Plaintiffs added the allegations that "[a]ccording to a former Paribas compliance officer, Paribas routinely provides to BNC in Switzerland parcels of U.S. currency," and that "[t]he former compliance officer knows U.S. currency was provided to BNC in 2020 and has no reason to believe Paribas stopped." TAC ¶ 55. Additionally, Plaintiffs alleged that Paribas had dealings with other European entities, which, in turn, did business in Cuba. *See, e.g.*, TAC ¶ 62(i) (alleging dealings with "a German company" that has "extensive business dealings with the Cuban Government-owned airline, Cubana de Aviacón, and BNC"); TAC ¶ 62(ii) (alleging that in 2018 a loan was made to "a French company that, one month later, sold locomotives and rolling stock to Cuba," and the loan was being repaid in 2020).

3

Defendants now move to dismiss Plaintiffs' claims for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). With respect to failure to state a claim, Defendants argue, among other things, that Plaintiffs' claims must be dismissed: (1) on scienter grounds, because Plaintiffs' new allegations are too vague and conclusory to cure the deficiencies Judge Wood identified; and (2) on statute of repose grounds, because Plaintiffs have made no plausible allegation that Defendants engaged in trafficking within two years of when this case was filed. In the alternative, Defendants argue that any alleged post-2010 violation occurred abroad and, thus, such allegations cannot support the exercise of personal jurisdiction in New York.[3]

After the motion to dismiss was fully briefed, the case was reassigned to this Court.

## LEGAL STANDARDS

### I. Motion to Dismiss

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant. *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] Defendants also argue that (1) the alleged conduct in this case does not meet the Helms-Burton Act's definition of "trafficking"; and (2) the claims must be dismissed as to particular plaintiffs who did not acquire their claims to Banco Nuñez until after March 12, 1996. Because Defendants' other argument justify dismissing the complaint in its entirety, the Court does not reach these questions.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II. The Helms-Burton Act

The Helms-Burton Act created a private cause of action, available to any United States national who owns a claim to property confiscated by the Cuban Government, against any person who intentionally "traffics" in such property. 22 U.S.C. § 6082(a)(1)(A). Pursuant to the Act, "a person 'traffics' in confiscated property if that person knowingly and intentionally" engages in one of three courses of conduct with respect to confiscated property "without the authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(13)(A).[4] As relevant to this case, the prohibited conduct includes when a person "engages in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13)(A)(ii).

## DISCUSSION

### I. Scienter[5]

Plaintiffs have attempted to cure the deficiencies that Judge Wood identified with respect to the scienter requirement by adding allegations which purport to demonstrate that SocGen and Paribas continued to traffic in confiscated property, through their dealings with BNC, even after

---

[4] The term "United States national" means "any United States Citizen," or "any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States." 22 U.S.C. § 6023(15)(A)-(B).

[5] While courts "traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013). Here, the Court finds it prudent to first consider whether Plaintiffs have remedied the deficiencies identified by Judge Wood, before evaluating whether Plaintiffs, in their attempt to cure such problems, have sacrificed personal jurisdiction.

being put on notice that BNC purportedly held confiscated property. The Court considers these new allegations as they pertain to each defendant individually.

### A. SocGen

Plaintiffs allege that SocGen got a demand letter in June 2019, informing it that its business with BNC constituted trafficking in confiscated property. The question is whether Plaintiffs plausibly allege that SocGen did business with BNC *after* receiving that letter. With respect to this issue, Plaintiffs added only the following allegation: that through at least August 2019, SocGen provided foreign currency to Cuban entities and that, "[u]pon information and belief, that foreign currency flows through BNC, which is the primary financial institution with whom foreign companies do business in or with Cuba." TAC ¶ 46.

This allegation is too conclusory and speculative to credit. The thrust of the allegation—that SocGen funds flow through BNC—is conspicuously prefaced with the phrase "upon information and belief." But it is well-settled that a litigant cannot simply place that phrase "in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Rather, pleading on information and belief is generally appropriate only where "[1] the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Neither condition is satisfied here.

First, Plaintiffs contend that SocGen has a long history of being secretive and that, as a result, the details of its conduct cannot be known by outsiders. But while Plaintiffs may be outsiders, they claimed to have access to an insider—the whistleblower. TAC ¶ 46. A party cannot support claims based on the word of an insider on the one hand (as Plaintiffs have done),

6

and then claim on the other that it has no access to inside information.  What is more, Plaintiffs make no attempt to explain why the whistleblower could not access such information; who within the company did have access to the information; or why that information existed *only* within the company, and could not be known by any outsiders.  Indeed, the other Cuban entities with whom SocGen was transacting would know, at least as well as SocGen, whether the money they had received had flowed through BNC.  In short, this information should be no secret.

Second, Plaintiffs argue that their "belief that SocGen's financing of hard-currency trade with Cuban entities involves BNC is based on other facts that make 'the inference of culpability plausible.'"  ECF No. 139 ("Opp.") at 10 (quoting *Arista*, 604 F.3d at 120).  However, support for this belief seems to stem solely from the allegation that BNC "is the primary financial institution with whom foreign companies do business in or with Cuba."  TAC ¶¶ 23, 46.  This allegation has nothing to do with the initial (and necessary) inference that the funds SocGen provided to Cuban entities must have flowed through a Cuban bank (*any* Cuban bank).  But even assuming it did, the inference that the funds then flowed through BNC, based on its market share alone, rests in the realm of speculation, *not* plausibility.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right above the speculative level . . . .").

In sum, Plaintiffs' stacking of inference upon inference is insufficient to plead more than the possibility that BNC was involved in any SocGen transactions after SocGen received the demand letter in June 2019.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  As a result, the claims against SocGen must be dismissed for failure to *plausibly* plead that the entity acted with the requisite scienter.

### B. *Paribas*

Paribas allegedly received a demand letter from Plaintiffs in February 2020. As previously discussed, the new allegations against Paribas can be placed in two buckets: *first*, Plaintiffs alleged that Paribas had business dealings with other European entities, which, in turn, did business with Cuba (TAC ¶ 62); and *second*, Plaintiffs alleged that "Paribas routinely provides to BNC in Switzerland parcels of U.S. currency," that it did so in 2020, and that there is "no reason to believe Paribas stopped" (TAC ¶ 55).

The first allegation is clearly deficient. In dismissing Plaintiffs' last complaint, Judge Wood explained that the "threadbare allegations" that Plaintiffs continued to maintain their credit facilities were "too vague to support an inference that either Defendant continued to extend credit to BNC. . . after receiving a demand letter," or "that a single credit facility was renewed with BNC . . . rather than with other Cuban entities that are irrelevant to liability in this case." *Sucesores*, 577 F. Supp. 3d at 313. The new allegation that Paribas had business dealings with other Cuban entities is simply more of the same and remains too vague to plausibly state a claim. That certain of these Cuban entities may have done business with BNC does not alter the analysis; after all, Paribas, at best, would be multiple steps removed from the confiscated property held by BNC and, as a result, could not be said to have done business with BNC or otherwise trafficked in their confiscated property. To hold otherwise would read a dangerously broad sweep into the Act.

The latter allegation is a slightly closer call. The claim that Paribas provided U.S. dollars to BNC in Switzerland—which is attributed to the knowledge of a former Paribas compliance officer—establishes a direct connection between Paribas and BNC. While the parties dispute whether that connection is sufficient to plausibly allege that Paribas "trafficked" in confiscated

property, the Court need not resolve that issue.[6] Even assuming that such conduct does qualify as trafficking, the claim that Paribas provided cash to BNC in Switzerland is not sufficient to support the exercise of personal jurisdiction in New York—a point that proves fatal to Plaintiffs' claim and which will be discussed further below.

## II.     Timeliness

Section 6084 of the Act provides that "[a]n action under section 6082 of this title [*i.e.*, for trafficking] may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur." 22 U.S.C. § 6084. Despite this limitation, Plaintiffs argue that the pre-2010 claims are timely due to equitable tolling and, in the alternative, because the dealings that BNC had with Defendants, including those which occurred during the repose period, "give rise to a single, timely claim that encompasses all the allegations." Opp. at 17. The Court disagrees.

As to the first argument, Plaintiffs contend that Section 6084 operates as a statute of limitations and is thus subject to equitable tolling, which could be appropriate given that the right to bring a cause of action under the Helms-Burton Act was suspended by presidential decree from when the Act would have taken effect in 1996 until May 2019. Opp. at 13-15; AC ¶¶ 71-73. Defendants, by contrast, argue that the provision operates as a statute of repose, which is not subject to equitable tolling. *See Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) ("[A] statute of repose is subject only to legislatively created exceptions, and not to equitable tolling."). As a result, Defendants contend that all claims must be dismissed to the extent they arise from alleged trafficking that occurred more than two years before the filing of

---

[6] In a nearly identical case, Judge Furman recently held that "the mere act of delivering cash to BNC" does not fit within the definition of "trafficking" and is therefore insufficient to plausibly state a claim under the Helms-Burton Act. *Moreira v. Société Générale, S.A.*, No. 20-cv-9380, 2023 WL 2051169, at *2 (S.D.N.Y. Feb. 16, 2023). The Court here does not take a position on that issue, however, since it need not be decided to resolve this motion.

9

the complaint on July 10, 2019 (or when Paribas was added as a defendant, on September 11, 2020).

The Court agrees with Defendants.  Pursuant to Section 6084, the time limitation runs from the date "the trafficking giving rise to the action has ceased to occur."  22 U.S.C. § 6084.  This language makes clear that time runs from "the defendant's last culpable act," and "not from the accrual of the claim."  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017).  According to the Supreme Court, this feature alone is "close to a dispositive indication that a statute is one of repose."  *Id.*  Additionally, by stating flatly that a trafficking action "may not be brought" more than two years after the last culpable act, Section 6084 "admits of no exception and on its face creates a fixed bar against future liability."  *Id.*  Thus, as Judge Furman recently concluded, "Section 6084 is more naturally read to be a statute of repose."  *See Moreira v. Societe Generale, S.A.*, 573 F. Supp. 3d 921, 931 (S.D.N.Y. 2021).

As to the second argument, Plaintiffs contend that their allegations are not time barred because the alleged trafficking had not "ceased to occur" before the beginning of the repose period, and because the allegations all give rise to a single, timely claim.  In support of this argument, Plaintiffs principally rely on *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020).  The court in that case, in ruling on a motion to dismiss, accepted as true that "between 1996 and 2019, Defendant knowingly and intentionally operated cruises to Cuba using [confiscated] Property and profited from that conduct."  *Havana*, No. 19-cv-21724, 2020 WL 5517590, at *11.  The court ultimately rejected the argument that pre-2004 claims were time barred, after noting that the complaint "sets forth only one count, sues only one defendant, and alleges trafficking relating to one [confiscated] Property."  *Id.*  In short, the court held that allegations of old conduct were not time barred since

10

the plaintiffs alleged "a series of trafficking taking place at various times spanning over a two-decade period." *Id.*

This case is different. Even assuming the allegation that Paribas provided cash to BNC in 2020 qualifies as trafficking, Plaintiffs cannot tie this allegation to those stemming from pre-2010 conduct. After all, the Court previously concluded that Plaintiffs failed to plausibly allege that Paribas "knowingly and intentionally" trafficked in confiscated property before it received the demand letter from Plaintiffs in February 2020. *Sucesores*, 577 F. Supp. 3d at 310-13. As a result, Plaintiffs have not plausibly alleged a long and ongoing violation of the Helms-Burton Act. At best, they have alleged in their Third Amended Complaint a violation of that Act beginning in 2020.

Accordingly, the Court dismisses as untimely all claims that are predicated on conduct that occurred before July 2017 (for SocGen) and September 2018 (for Paribas). This alternative holding has the same effect as the Court's scienter holding, dismissing the pre-2010 allegations of trafficking, which form the crux of Plaintiffs' complaint. However, the timeliness holding has a significant impact on the Court's personal jurisdiction analysis, which proves fatal to the last remaining claim: that Paribas provided cash to BNC in Switzerland.

### III. Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over Paribas for the allegation that Paribas gave BNC cash in Switzerland during the repose period and after the demand letter was received.[7] To address this argument, the Court must look to whether the New York long-

---

[7] Defendants argue that the Court would also lack personal jurisdiction over SocGen, to the extent that the new allegations were sufficient to state a claim under the Helms-Burton Act, given that SocGen previously consented to be subject to personal jurisdiction in New York. Opp. at 16. The Court need not reach the issue of whether SocGen is subject to personal jurisdiction or whether SocGen has waived a jurisdictional defense, however, because it has already concluded that Plaintiffs failed to state a claim against SocGen. *See* Discussion, *supra*, at Section I.

11

arm statute authorizes an exercise of personal jurisdiction in this case. *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

Here, Plaintiffs claim jurisdiction over Paribas under the provision of New York's long-arm statute that addresses the transaction of business in New York. *See* N.Y. C.P.L.R. § 302(a)(1). To establish personal jurisdiction under that provision, two requirements must be met: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022). Defendants argue that neither requirement is satisfied because any allegation concerning conduct in New York relates to conduct that occurred before 2010 and is thus time-barred. As such, no claim can arise from the business transaction in New York.

Plaintiffs do not dispute that time-barred conduct cannot be used to support the exercise of personal jurisdiction.[8] Nor do Plaintiffs dispute that all of the post-2010 conduct is alleged to have occurred abroad. Plaintiffs dispute *only* Defendants' claim that the New York conduct, which took place before 2010, is time barred. For the reasons discussed above, however,

---

[8] The caselaw on this subject is scant and mixed, which led Judge Furman (in a related case) to reserve judgment on the issue pending further briefing by the parties. *See Moreira v. Societe Generale, S.A.*, No. 20-cv-9380, 2023 WL 359446, at *4 (S.D.N.Y. Jan. 23, 2023) (collecting cases). But the Court need not decide whether, on a categorical basis, time-barred claims can give rise to personal jurisdiction. That is because Plaintiffs have conceded that point by failing to dispute it in their opposition brief. *See W. Bulk Carriers KS v. Centauri Shipping Ltd.*, No. 11-cv-5952, 2013 WL 1385212, at *3 (S.D.N.Y. Mar. 11, 2013) (concluding that the plaintiffs conceded that the Court lacked jurisdiction over a claim because it failed to respond in its opposition brief to the defendant's argument regarding the lack of jurisdiction); *In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address).

The Court notes that the parties filed several letters in this case following Judge Furman's opinion in *Moreira*. [ECF Nos. 143-146]. Certain of these letters attached as exhibits the supplemental briefing from *Moreira*, which had been submitted in that case at the request of Judge Furman. [ECF Nos. 144, 145]. But this Court did not request supplemental briefing, nor did it solicit any supplemental letters, each of which was filed after the close of briefing. To the extent these letters could be viewed as raising new arguments related to personal jurisdiction, those arguments need not (and will not) be considered. *See Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018) ("Caselaw in this Circuit confirms that a court need not consider new claims raised in supplemental letters filed without leave of the Court."); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 164 n.5 (S.D.N.Y. 2015) (disregarding supplemental letter because it "improperly raises new arguments after the close of briefing and argument, without having sought or obtained permission for such a submission").

Plaintiffs' arguments on that score have no merit.  As a result, Plaintiffs have failed to establish any timely connection between Paribas and New York, requiring the Court to dismiss the final allegation against Paribas (which concerns conduct abroad) for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.  Plaintiffs' request for oral argument is denied.  [ECF No. 140].

The Clerk of Court respectfully is requested to close the Motion at ECF Nos. 136 and 140.

**SO ORDERED.**

**Date:   March 30, 2023**
**New York, NY**

*/s/ Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**